**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Dated: 05:19 PM August 26, 2013**

**Russ Kendig
United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| JAMES LEE WORRELL, SR. AND ) | CASE NO. 12-61021 |
| CHARLENE ANN WORRELL, ) | |
| ) | ADV. NO. 12-6128 |
| Debtors. ) | |
| _____ ) | JUDGE RUSS KENDIG |
| LISA M. BARBACCI, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OF OPINION** |
| ) | **(NOT FOR PUBLICATION)** |
| JAMES LEE WORRELL, SR. AND ) | |
| CHARLENE ANN WORRELL, ) | |
| ) | |
| Defendants. ) | |

In this adversary proceeding, the chapter 7 trustee, Lisa M. Barbacci ("Trustee") seeks to deny Debtors a discharge under 11 U.S.C. § 727(a)(2)(A). She contends that Debtors fraudulently transferred property by spending tax refunds on luxury purchases in the sixty days before they filed bankruptcy. Debtors admit that the spending spree was wrong but deny that they possessed the fraudulent intent necessary to deny discharge. The parties submitted a stipulation of fact on June 14, 2013. Trustee filed a motion for summary judgment on July 12, 2013. Debtors' response was filed on July 25, 2013.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of

1

reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

In February 2012, before filing bankruptcy, Debtors received $8,545.00 in state and federal tax refunds for tax year 2011. Over one-half of the federal refund was attributable to Debtors' ability to claim their two grandchildren in 2011. They received $2,833.00 from the earned income credit and $2,447.00 from the additional child tax credit.

Per the stipulated facts, prior to filing a bankruptcy petition, they spent $6,521.59 of the refunds on the following:

| $ | 1,700.00 | Repayment of loans to family members |
| $ | 1,500.00 | For attorney fees for a third party and clothes for a third party |
| $ | 1,000.00 | Gambling trip (Fallview) |
| $ | 600.00 | Gambling trip (Mountaineer Casino) |
| $ | 629.00 | Gambling trip (Wheeling, WV) |
| $ | 552.00 | Autorama (paid for six people) |
| $ | 200.59 | Souvenirs and food at Autorama |
| $ | 340.00 | Restaurant dining |

Debtors filed a joint chapter 7 case on April 9, 2012. Mr. Worrell is employed and earns $1,740.00 per month, net. Mrs. Worrell is not employed and has no income.

Debtors' personal assets totaled $3,865.00. They listed no secured or priority debt. Their unsecured debt, per Schedule F, totaled $12,642.00.[1] On the Statement of Financial Affairs, Debtors disclosed payments to insiders totaling $2,200.00 in the year before the bankruptcy was filed. At the time the Debtors spent their tax refunds, they were insolvent.

At the 341 meeting, Debtors admitted that spending the refunds was wrong. They claim that they were merely seeking to show their gratitude for the support from their family.

## DISCUSSION

Trustee moves for summary judgment under Federal Rule of Bankruptcy Procedure 7056, the bankruptcy complement to Federal Rule of Civil Procedure 56. To succeed on summary judgment, the rule requires the movant to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. Pro. 7056.

---

1 The total amount of filed unsecured claims is much higher and now exceeds $30,000.00.

2

All evidence, facts and inferences are viewed in the light most favorable to the nonmoving party. Superior Bank v. Boyd (In re Lewis), 398 F.3d 735 (6th Cir. 2005) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). A court is not to weigh evidence at summary judgment phase. Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1448 (6th Cir. 1993) (citations omitted).

Section 727 provides exceptions to discharge. Under § 727(a)(2)(A), a court is not to enter a discharge for a debtor who

> with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition . . . .

The standard test cited by courts has two prongs: "(1) a disposition of property, such as concealment, and (2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property.'" Keeney v. Smith (In re Keeney), 227 F.3d 646, 654 (6th Cir. 2000) (quoting Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997)). This court finds two additional tacit requirements concerning the disposition element. First, the subject property must be property of the debtor. *See, e.g.,* Hulsing Hotels Tennessee v. Steffner (In re Steffner), 479 B.R. 746 (Bankr. E.D. Tenn. 2012). Second, per the direct language of the statute, the disposition must have occurred within a year of filing.

Trustee bears the burden of proof on her § 727 claim and must prove it by a preponderance of the evidence. Barclays/Am. Bus. Credit v. Adams (In re Adams), 31 F.3d 389, 394 (6th Cir. 1994). The debtor enjoys the benefit of liberal construction of the statute. Buckeye Ret. Co., LLC v. Swegan (In re Swegan), 383 B.R. 646, 653 (B.A.P. 6th Cir. 2008) (citations omitted).

The disposition prong is not at issue on the present facts. Debtors do not dispute that they transferred their property, the tax refunds, shortly before filing bankruptcy. What is contested is whether Debtors possessed the requisite intent to deny discharge. Debtors now admit that what they did was wrong but they deny any fraudulent intent and claim that they were only trying to be nice to family members who have supported them in the past. They point out that the amount of the refund resulted from claiming their grandchildren: $2,883.00 was due to the earned income credit and $2,447.00 was from the additional child tax credit. Debtors also contend that portions of the tax refund would have been exempt had they filed before they received it.

Intent is generally a question of fact. This alone, however, does not result in the immediate denial of summary judgment. "Even where intent is at issue, 'summary judgment is

3

appropriate if all reasonable inferences defeat the claims of one side . . . .'" Swegan, 383 B.R. at 656 (citing Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch), 237 B.R. 160, 165 (B.A.P. 9th Cir. 1999) (quotation omitted)). Once the moving party establishes the elements necessary for its claim, the nonmoving party is required to 'go beyond the pleadings and by [its] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."' Harvey v. Campbell Cnty. Tennessee, 453 Fed.Appx. 557 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). "The 'mere possibility' of a factual dispute is not sufficient to create a triable case." Baird v. NHP Mill Creek Apartments, 94 Fed.Appx. 328 (6th Cir. 2004) (citing Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986)). A genuine issue of material fact is one that "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The circumstances surrounding the property disposition can be used to infer intent. Keeney, 227 F.3d at 684 (citing In re Snyder, 152 F.3d 596, 601 (7th Cir. 1998) (citation omitted)). The intent must be actual, not constructive. Swegan, 383 B.R. at 655 (citing Roberts v. Montgomery (In re Montgomery), 2007 WL 625196, *2 (Bankr. E.D. Tenn. 2007)). " A reckless disregard or indifference for the trust also evidences fraudulent intent." Buckeye Ret. Co., LLC v. Heil (In re Heil), 289 B.R. 897, (Bankr. E.D. Tenn. 2003) (citations omitted); *see also* Montedonico v. Beckham (In re Beckham), 2009 WL 1726526 * 7 (B.A.P. 6th Cir. 2009) (unpublished). Since it is difficult to establish actual fraudulent intent through direct proof, courts may rely on the badges of fraud. U.S. Trustee v. Zhang (In re Zhang), 463 B.R. 66, 78 (Bankr. S.D. Ohio 2012). Numerous factors exists, but a sister court has cited the following as badges:

> (1) a lack of adequate consideration for the property transferred; (2) a family or close relationship between the parties; (3) the retention of possession for use and benefit; (4) the financial condition of the transferor before and after the transfer; (5) the cumulative effect of the transactions and course of conduct after the onset of financial difficulties or threat of suit; and (6) the general chronology and timing of events.

C & H Elec. v. Newell (In re Newell), 321 B.R. 885, 890 (Bankr. N.D. Ohio 2005) (citing Ingersoll v. Kriseman (In re Kriseman), 124 B.R. 116, 121-22 (M.D. Fla. 1991)). Applying these badges, the court finds that a presumption of fraudulent intent arises.

Debtors admitted spending the tax refunds for the benefit of insiders, including themselves and other family members. The statement of financial affairs discloses transfers to insiders and the stipulation of fact indicates $1,700.00 was used to repay family member loans and $1,500.00 was used for attorney fees and clothes for an unidentified third party. Debtors also benefitted from the trips, tickets and other recreational expenses footed by the tax refunds.

Debtors spent seventy-six percent of the tax refund in callous disregard of their creditors.

4

While they didn't retain an interest in the funds, they exercised complete control over the dissipation. Debtors received nothing of tangible value in exchange for the amounts they spent. Debtors were clearly insolvent before, during and after the tax refunds were spent.

In Debtors' favor, they did not hide or conceal how the refunds were spent. They also disclosed the repayments to insiders on the Statement of Financial Affairs. Additionally, the Statement of Financial Affairs does not disclose any open lawsuits by creditors. It shows that one lawsuit had been filed in 2011 but that the debt was satisfied in November 2011 by wage garnishment. However, the petition listed over $12,000 in debt. The refunds represented sixty-eight percent of the total amount of the unsecured debt listed on Schedule F.

Debtors have few assets. The total on Schedule B is $3,865.00. $2,550.00 is the value of two vehicles and a car trailer. The tax refund represents more than twice the total of Debtors' personal assets. According to Schedule I, Debtors' net monthly income is $1,740.00. The $8,545.00 in refunds represents nearly five months of work which Debtors spent as quickly as water coursing down a steeple.

Based on the foregoing review of the facts and the badges of fraud, the court finds that the circumstances suggest that Debtors did act with either the intent to hinder or delay or in reckless disregard or indifference of their creditors. Debtors attempt to rebut this presumption by mounting a "we were bad, not evil" defense. In an affidavit, they deny fraudulent intent, explaining

> 5. We paid monies to our children which we listed on our petition.
> 6. We took ourselves and our family on some outings, vacations and out to eat of which all expenses were paid by us for meals, transportation, and any lodging.
> 7. We did this because we were grateful for our families (sic) past support and to repay them not with any intent to deceive or defraud our creditors.
> 8. In looking back, we agree with the Trustee that this may have been wrong, but we had no intent to deceive or defraud our creditors.

(Aff. attached to Debtors' Resp. to Mot. Summ. J. ¶¶ 5-7, ECF No. 18). The court must view these facts in the light most favorable to Debtors, the nonmovants. In this light, the court cannot but conclude that Debtors' subjective intent was not to harm creditors, but was to treat their family. This creates a genuine issue of material fact as to intent, making summary judgment inappropriate.

In spite of the court's conclusion that a question of fact exists on Debtors' intent in spending the funds, the court is challenged by the question of whether a debtor can possess any ill intent by disposing of property that would have been exempt from the bankruptcy estate. Debtors mention, but do not explore, the exemption issue.

Debtors' federal tax refund shows that $2,833.00 of the refund was attributed to the earned income credit and $2,447.00 was the amount of the additional child tax credit. Under Ohio Revised Code § 2329.66(A)(9)(g), both are protected under Ohio's exemption statute, applicable in a bankruptcy statute by Ohio's opt-out of the federal exemption scheme. 11 U.S.C. § 522(b); O.R.C. § 2329.66. Consequently, Debtors were spending funds that were subject to exemption from property of the bankruptcy estate. Since the funds were exemptible, there is an argument that no harm befell creditors.

Generally, as long as they can be traced, exempt funds do not lose their exempt nature merely through deposit to a bank account. *See* Baumgart v. Alam (In re Alam), 359 B.R. 142 (B.A.P. 6th Cir. 2006) (settlement proceeds from long term disability plan are sickness and accident benefits that maintain exempt status following investment into mutual accounts); Daugherty v. Cent. Tr. Co. of Northeastern Ohio, N.A., 28 Ohio St.3d 441 (Ohio Sup. Ct. 1986) (personal earnings do not lose exempt status upon deposit into bank account); In re Maine, 461 B.R. 723 (Bankr. S.D. Ohio 2011) (debtor can exempt funds traceable to the earned income creditor and the child tax credit); In re Wood, 459 B.R. 263 (Bankr. S.D. Ohio 2011) (tax refund didn't lose exempt status upon conversion to cash). Consequently, if Debtors could trace the portions of the refunds attributable to the earned income and child tax credits, upon filing a bankruptcy, those funds are likely to be exempt.

If the funds were subject to exemption from the estate, the court queries whether Debtors, in spending the funds prepetition, could have intended to hinder, delay or defraud creditors who had no claim to the funds? This question of law was not answered.

The existence of questions of fact prevent entry of summary judgment. Trustee's motion will be denied by separate order.

\# \# \#

**Service List:**

Lisa M. Barbacci
P.O. Box 1299
Medina, OH 44258-1299

John H Hornbrook
1400 N Market Ave
Canton, OH 44714-2608

6

12-06128-rk    Doc 19    FILED 08/26/13    ENTERED 08/27/13 09:10:03    Page 6 of 6